[Crim. No. 19950. First Dist., Div. Three. June 25, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
PAUL MICHAEL McNALLY, Defendant and Respondent.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Appellant.

Michael Jacobowitz, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

SCOTT, J.—The People appeal following the dismissal of the information against respondent Paul McNally after a determination that McNally had been previously placed in jeopardy for the same charge. Respondent was charged with kidnaping (Pen. Code, § 207), forcible rape (Pen. Code, § 261, subd. 2), rape by threat of great bodily harm (Pen. Code, § 261, subd. 3), and forcible oral copulation (Pen. Code, § 288a). It was alleged that in the commission of the last three offenses, respondent used a deadly weapon, a metal pipe (Pen. Code, § 12022, subd. (b)), and that he inflicted great bodily injury during commission of the rapes (Pen. Code, § 12022.7).

Prior to trial appellant's attorney, Deputy Public Defender H. Sinclair Kerr, became aware that his office had previously represented the victim in this case in a misdemeanor matter. Kerr decided this prior representation did not amount to a conflict of interest.

On March 19, 1979, trial commenced and the jury was selected. During the trial Kerr became aware that the public defender's office had represented the victim in at least two other misdemeanor cases. After further consultation with his office and a review of the various case files, Kerr determined that in fact a conflict of interest did exist. On the third day of trial, Kerr explained the conflict to the court and asked to be relieved. The court declared itself satisfied that there was a conflict of interest, and expressed the view that it had no other choice but to relieve Kerr as attorney for defendant. The court then declared a mistrial.

Prior to the date set for the second trial, respondent filed a notice of motion for an order entering a plea of once in jeopardy. After a hearing, the plea was sustained and the information was dismissed. The court found that respondent did not consent to the mistrial, and that there was no legal necessity for its granting. We disagree. For reasons which we will discuss, we conclude that legal necessity required this mistrial, and that respondent's consent was unnecessary under these circumstances.[1]

---

[1]Respondent did consent to the mistrial. However, he contends on appeal that he was never advised as to the effect of a mistrial, and that therefore his consent was ineffective. As we conclude his consent was unnecessary, we need not address this contention.

■ It is well settled that (1) a person is in legal jeopardy for an offense when placed on trial in a court of competent jurisdiction, on a valid accusatory pleading, before a jury duly impaneled and sworn, and that (2) discharge of that jury without a verdict is equivalent to acquittal and bars a retrial, unless the defendant consented to the discharge or legal necessity required it. (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 712 [87 Cal.Rptr. 361, 470 P.2d 345].)

The general rule is that legal necessity for a mistrial arises from an inability of the jury to agree, or from physical causes beyond the control of the court, such as the death, illness, or absence of judge or juror, or of the defendant. A mere error of law or procedure, even a "palpably prejudicial error" in an evidentiary ruling, does not constitute legal necessity. (*Larios* v. *Superior Court* (1979) 24 Cal.3d 324, 331 [155 Cal. Rptr. 374, 594 P.2d 491]; *Curry, supra,* 2 Cal.3d at pp. 713-714.)

As the court stated in *Larios* (at p. 330): "'A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial....Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety [involved in being prosecuted]. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of paternalistic concern for his welfare.' (*Curry, supra,* at p. 717.)" (See also *People* v. *Compton* (1971) 6 Cal.3d 55 [98 Cal.Rptr. 217, 490 P.2d 537].)

■ We must decide, therefore, whether this conflict of interest, discovered and announced in midtrial, amounted to legal necessity for a mistrial, or whether it was a development akin to an error of law or procedure requiring the defendant's consent before a mistrial could be declared. Initially, we observe that respondent does not dispute that a disabling conflict of interest existed as to his original trial counsel, requiring the appointment of substitute counsel. The thrust of respondent's contention here is that such conflict of interest does not mandate a mistrial and that absent respondent's effective consent, his retrial is precluded.

In *T. P. B.* v. *Superior Court* (1977) 66 Cal.App.3d 881 [136 Cal. Rptr. 311], during a juvenile court hearing, the judge disqualified himself and declared a mistrial, explaining that he could not fairly and impartially consider the evidence. When a second hearing was set, the juvenile's plea of once in jeopardy was rejected on the ground that legal necessity warranted the mistrial. The appellate court affirmed, reasoning that once the judge admitted his disqualification, Code of Civil Procedure section 170 required that the action be heard by another judge. "The situation...did not involve a mere error of law or procedure; rather it involved the very jurisdiction of the trial judge to proceed with the action. The posture in which the action found itself is akin to the legal necessity deemed a physical cause beyond the control of the court brought about by the illness or absence of the judge." (66 Cal.App.3d at p. 886.)

The absence of a defendant's attorney was at issue in *People* v. *Manson* (1976) 61 Cal.App.3d 102 [132 Cal.Rptr. 265]. The attorney for codefendant Leslie Van Houten disappeared after the parties rested, but before the court ruled on jury instructions and before closing argument. Another lawyer was appointed, over Van Houten's objection. Prior to argument, she moved for a mistrial, arguing that new counsel could not effectively argue credibility, because of his absence during the taking of evidence. The motion was denied. On appeal, the court emphasized that the right to assistance of counsel is the right to *effective* representation, including an effective closing summation. The court also discussed at length the significance of continuity of representation, and concluded that the dimension of the case was such that substituted counsel could not assume a meaningful adversary role. Therefore, the substitution deprived Van Houten of the minimal requirement of effective counsel. Under these facts, the disappearance of the lawyer was an event of "legal necessity" which should have resulted in the granting of a mistrial, in the same manner as would the absence of judge or juror. (61 Cal. App.3d at p. 202.)

Here, too, the development which led to the mistrial was not simply a legal or procedural error; rather, counsel's belated discovery of his conflict of interest struck at respondent's constitutionally guaranteed right to assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. (*People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10,

447 P.2d 106, 34 A.L.R.3d 454].) Although the conflict here was occasioned by prior representation of the victim rather than by simultaneous representation of codefendants, nevertheless, had the court denied counsel's motion to withdraw, and had respondent been convicted, that conviction would have been subject to challenge on appeal on the ground that respondent was thereby denied effective assistance of counsel. (See *People* v. *Pineda* (1973) 30 Cal.App.3d 860, 865 [106 Cal. Rptr. 743].) Admittedly, respondent's counsel did not physically disappear, as did the attorney in *Manson.* Nonetheless, it appears to be undisputed that counsel could no longer effectively represent respondent. In a sense, therefore, that counsel became "absent," as did the judge in *T. P. B.* v. *Superior Court, supra*, 66 Cal.App.3d 881, when he disqualified himself. The trial could not continue with his participation, nor could it continue without him, as it is clear that respondent did not want to represent himself.

Respondent urges here that instead of declaring a mistrial, the court should have appointed a substitute attorney, granted a recess and resumed the trial at a later date. Respondent cites *Hutson* v. *Superior Court* (1962) 203 Cal.App.2d 687 [21 Cal.Rptr. 753], for the proposition that a continuance would have been appropriate. In *Hutson,* one attorney represented two defendants, Hutson and Daniels, at a preliminary hearing. At trial, he continued to represent Daniels, but Hutson had separate counsel. When Hutson testified in his own defense, his former lawyer told the court he could not cross-examine him without a waiver of the attorney-client privilege. Hutson refused to waive the privilege, and the court declared a mistrial, apparently as to both defendants. When Hutson's trial was reset, his plea of once in jeopardy was denied. The appellate court reversed, finding no legal necessity for his mistrial. The court suggested that the trial court could have granted a mistrial upon request as to Daniels, so that Hutson's trial could proceed without delay. The court also suggested a continuance could have been granted as to Daniels, so that he could obtain new counsel. In any event, there was no legal necessity *for Hutson's mistrial.* Respondent's reliance on this case is misplaced. As the petitioner before the Court of Appeal was Hutson, not Daniels, the court did not decide the question at issue here.

Furthermore, respondent's proposed solution, though possible, is not feasible as a practical matter. Substitution of counsel at trial would necessarily result in new counsel being required to fully familiarize himself with the facts of the case, a task which would include reinterview-

ing witnesses. It would be necessary to obtain a transcript of all prior proceedings, including the testimony to date at the trial, the opening statements, if any, and probably the jury voir dire. The delay incident to this process would be substantial. Recalling the sworn jury after such a delay would present extremely difficult problems. Typically, at the commencement of a trial, the jury is advised of the estimated length of the trial. An interrupted trial would, of necessity, contravene any representations made as to how long jurors would have to be available. Furthermore, depending on the length of the recess necessary, when the trial finally resumed, it might be necessary either to reread the testimony of witnesses already sworn or actually to have them retestify. All of these problems, as well as others not detailed here, make respondent's solution unworkable.

We are aware that, typically, attorneys know of and declare their conflicts of interest before trial. What occurred here will be infrequent. We conclude that when, during a trial, the attorney for a defendant discovers and declares a conflict of interest, and when the trial court concludes that conflict may prejudicially affect the defendant's right to effective counsel, legal necessity requires a mistrial. The defendant's consent to the mistrial under such circumstances is unnecessary.

Judgment is reversed and the information is ordered reinstated.

White, P. J., and Feinberg, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 11, 1980.