[Crim. No. 35321. Second Dist., Div. Five. Sept. 29, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
VERNETT ALLEN, JR., Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Laurence M. Sarnoff and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**KAUS, P. J.**—The People appeal from an order dismissing count 1 of an information on the ground that defendant has been once in jeopardy.

In a three-count information, defendant was charged in count 1 with murder (Pen. Code, § 189), in count 2 with kidnaping for purposes of robbery (Pen. Code, § 209), and in count 3 with robbery (Pen. Code, § 211). After all the evidence was presented and counsel had completed their arguments, the jury was instructed on first degree murder, second degree murder and voluntary manslaughter as offenses covered by count 1. As to count 2, the court instructed on the charged offense as well as on the included offenses of simple kidnaping and false imprisonment by violence. As to count 3, only instructions on robbery were delivered. The jury was provided a "Guilty" verdict form for each of the offenses, charged and included, but only three "Not Guilty" forms—one for each count.

After the jury had deliberated for five days and the better part of a sixth, the foreman sent a note informing the court that the jury had been deadlocked with no change of position for "many days" and requesting that the jurors be "polled by the Court and/or dismissed." Noting for the record that counsel had agreed in chambers that before the jurors were polled they should be asked whether they had reached a partial verdict, the court summoned the jurors and instructed them that if they had "reached a unanimous verdict as to any count or as to any crime," they should complete the appropriate verdict form.

After a brief resumption of deliberations, the jury returned a written verdict finding defendant not guilty of robbery as charged in count 3. The verdict was entered. The court then asked each of the jurors whether further deliberations would aid in resolving the deadlock on counts 1 and 2; each answered in the negative.

Both counsel informed the court that they would have no objection if the court were to inquire "how [the jurors] stand numerically with-

out the words 'guilty or not guilty'...." The foreman reported the numerical standing as follows: first degree murder—12 to nothing; second degree murder—10 to 2; voluntary manslaughter—10 to 2; kidnaping for robbery—12 to nothing; simple kidnaping—11 to 1; false imprisonment—12 to nothing.

Outside the presence of the jury, the court and defense counsel both remarked that as to those offenses upon which the vote was unanimous, a verdict had apparently been reached. Defense counsel urged that the jury "should be directed to return a verdict to the Court, at least as to the first-degree murder, [Pen. Code sec.] 209 and false imprisonment."[1]

The court requested the jury to render a verdict on each of the three offenses on which the voting had been unanimous. The jury responded by sending a note to the court in which they explained that they were confused: the court's most recent instruction seemed to conflict with the prior instruction, delivered when the case was first submitted, that the jury was to return only one written verdict for each count. Outside the presence of the jury, the following then occurred: "MR. SARNOFF [defense counsel]: I understand that the Court is going to inquire or will receive an orally rendered verdict on each of these counts.

"THE COURT: Yes. We will simply ask the jury, and counsel have urged this on the Court, to simply ask the foreman what their verdict is on murder first, on kidnapping for robbery, on false imprisonment, to state their verdict orally.

"MR. SARNOFF: That is agreeable.

"MR. WHELAN [deputy district attorney]: That is agreeable, Your Honor.

"THE COURT: Very well. Then I take it, depending on what the result is, Counsel, I am prepared to declare a mistrial on the remaining count.

---

[1]Assuming that the votes on the various offenses had been logical and consistent, the handwriting was on the wall. As to count 1, the unanimous vote on first degree murder was bound to be an acquittal; otherwise, there would have been no reason to bother with the lesser offenses. The same reasoning applies to the kidnaping for robbery vote. On the other hand, the vote on false imprisonment could not logically have been an acquittal: since simple kidnaping necessarily included false imprisonment, an acquittal on the latter charge would have required an acquittal of the former. Nevertheless, it does not appear that defense counsel drew all of these conclusions since he speculated that as to count 2 "they could reach a verdict of guilty as to kidnapping for robbery and also not guilty as to false imprisonment and being hung on simple kidnapping."

"Mr. Whelan: Very well.

"The Court: And then it will be up to the district attorney's office, taking everything into consideration, whether they will retry Vernett Allen on the one count;[2] is that acceptable?

"Mr. Whelan: That is acceptable.

"Mr. Sarnoff: Yes, I would ask the Court, however, to inquire of the foreman as to whether it was tending toward guilty or not guilty.

"The Court: Yes, I will." The jury then orally delivered verdicts of not guilty of first degree murder, not guilty of kidnaping for robbery, and guilty of false imprisonment. The foreman also announced the votes on "murder second" and voluntary manslaughter, both of which were "10 guilty, 2 not guilty," as well as "simple kidnaping" on which the jury stood "11 to 1—guilty." The court then declared a mistrial with respect to the offenses on which the jury was unable to agree. Counsel stipulated that the not guilty verdicts could be reflected in the court's minutes without the necessity of the jury returning written verdicts and, finally, the jury was instructed to return a written verdict on the false imprisonment charge. The jury complied.

A week later defendant entered pleas of "former acquittal and former conviction" as to counts 1 and 2 and moved to dismiss those counts. The People did not oppose the motion as far as count 2 was concerned, but contended that defendant could be retried on count 1 for murder in the second degree or voluntary manslaughter. The trial court disagreed and, relying on *Menjou* v. *Superior Court* (1932) 128 Cal.App. 117 [16 P.2d 1007], dismissed count 1.[3] The People appeal from that dismissal. (See Pen. Code, § 1238, subd. (a)(8).)

## DISCUSSION

In *Menjou, supra*, the defendant was charged with murder. The jury was instructed that under the evidence it could convict him of either murder or manslaughter or, if it concluded that he was guilty of neither

---

[2]Since more than one count remained, the court's reference to "the remaining count" and "the one count" is puzzling. Later the court referred to "the remaining counts" being retried. We assume that on the earlier occasion, the court simply misspoke.

[3]The record does not reveal what, if any disposition was made of the remainder of count 2.

offense, it could acquit him altogether. Three-verdict forms which re-flected those instructions were provided. Rather than utilizing any of the prepared forms, the jury executed its own form which stated that it found the defendant "not guilty of murder, a felony, as charged. . . ." After the verdict had been brought in, the foreman expressed some "uncertainty" about it. He explained that although the jurors had unanimously agreed that the defendant was not guilty of murder, their last vote on the manslaughter charge had been eight for acquittal and four for conviction. The court then set the matter for retrial on the manslaughter charge and the jury was discharged.

The defendant petitioned the appellate court for extraordinary relief, claiming that double jeopardy principles prohibited any retrial on the manslaughter charge. The court agreed, analyzing the problem in two stages. First, it noted that Penal Code section 1023 provided that an acquittal on an information barred any retrial for the charged offense "or for an offense necessarily included therein, of which he might have been convicted under that. . .information."[4] Then, adverting to the long-standing rule that the return of a verdict of acquittal bars any retrial notwithstanding the fact that the verdict resulted from judicial or jury error (see *People* v. *Webb* (1869) 38 Cal. 467, 477-479), the court concluded that further prosecution for manslaughter was barred. (*Menjou* v. *Superior Court, supra*, 128 Cal.App. at pp. 120-122.)

The critical distinction between *Menjou* and the present case is that here the verdict of acquittal was not delivered prematurely because of the jury's failure to follow instructions, but was rendered at the urging of defense counsel, who had full knowledge that the jurors were dead-locked on the lesser offenses. Moreover, at the time there appeared to be no doubt in the mind of either counsel or the court that if the district attorney chose to reprosecute the lesser offenses, he could do so.[5]

In these circumstances, we see no constitutional or statutory bar-rier to reprosecution for the lesser offenses. Where a defendant moves

---

[4]Section 1023 implements the constitutional prohibitions against double jeopardy contained in article I, section 15 of the California Constitution and the Fifth Amendment to the federal Constitution. The statute was amended in 1951, the principal change being a substitution of the words "accusatory pleading" for previous references to "indictment or information." (Stats. 1951, ch. 1674, § 86.) No claim is made that the amendment affected the rule announced in *Menjou*.

[5]From defendant's point of view, his counsel's apparent strategy was impeccable. Rather than permitting a mistrial as to count I in its entirety, the acquittal of the first degree murder charged guaranteed that any retrial would be limited to the lesser offenses.

for a mistrial or consents to the discharge of the jury, double jeopardy principles do not bar a retrial. (*People* v. *Hathcock* (1973) 8 Cal.3d 599, 613-614 [105 Cal.Rptr. 540, 504 P.2d 476].) In such cases, the important consideration for double jeopardy purposes is that the defendant "retain[s] primary control" over the course of his trial. (*United States* v. *Dinitz* (1976) 424 U.S. 600, 609 [47 L.Ed.2d 267, 275, 96 S.Ct. 1075].) Similarly, although a defendant may normally require that both greater and lesser offenses be resolved in one proceeding, the principle of double jeopardy does not preclude him from electing to have them tried separately.

Finally, defendant urges that we cannot infer a "knowing, intelligent and voluntary" waiver from the fact that counsel urged the partial verdict to be read and his agreement with the court that it would be "up to the district attorney"s office...whether they will retry" the deadlocked counts upon which a mistrial was declared. (See *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357].) The Supreme Court has held the *Johnson* standard inapplicable in comparable circumstances. (*United States* v. *Dinitz, supra*, 424 U.S. at p. 609, fn. 11 [47 L.Ed.2d at p. 275].)[6]

The order granting dismissal is reversed.

Stephens, J., and Ashby, J., concurred.

---

[6]"The respondent characterizes a defendant's mistrial motion as a waiver of 'his right not to be placed twice in jeopardy' and argues that to be valid the waiver must meet the knowing, intelligent, and voluntary standard set forth in *Johnson* v. *Zerbst*, 304 U.S. 458. This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right. See *Breed* v. *Jones*, 421 U.S. 519, 534; *United States* v. *Wilson*, 420 U.S. 332, 343-344, n. 11; *United States* v. *Jorn*, 400 U.S. 470, 484-485, n. 11 (plurality opinion); *United States* v. *Tateo*, 377 U.S., at 466."