[Crim. No. 14491. Fourth Dist., Div. Two. Mar. 1, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DARYLE LEE MOORE, Defendant and Appellant.

Counsel

Gregory L. Attruia-Hartwell, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**RICKLES, J.**—Defendant Daryle Lee Moore was convicted by jury verdict of one count of sodomy with a child under the age of 14 years (Pen. Code, § 286, subd. (c)), two counts of oral copulation with a child under the age of 14 years (Pen. Code, § 288a, subd. (c)), and three counts of lewd acts with a child under the age of 14 years (Pen. Code, § 288, subd. (a)). An allegation of prior felony conviction (Pen. Code, § 667.5, subd. (a)) was tried to the court and found to be true. Defendant appeals from the judgment sentencing him to state prison for a term of 18 years.

The only issue raised on appeal is whether the conviction violates the double jeopardy prohibition. (U.S. Const., 5th Amend.; Cal. Const., art I, § 15.)

The offenses occurred on six separate occasions over a period of two to three months and the victim of each offense was then ten years of age.

At the first trial, the court excluded certain testimony of the victim's grandmother. Later, in the presence of the jury, the prosecutor made a remark alluding to the earlier ruling. The defense attorney objected to the remark and requested a hearing in chambers. Once in chambers, the defense attorney waived defendant's presence and moved for a jury admonition or, in the alternative, for a mistrial.[1] The matter was discussed and the court asked defense

---

[1]"The Court: Waive the presence of your client?
"Mr. Smeltzer [Defense Counsel]: Waive my client's presence. [¶] I would move the Court to admonish the jury to disregard Mr. Abernathy's comments on the Court's ruling as to what's admissible and what's not admissible.
"The Court: Number two?
"Mr. Smeltzer: I'm not sure that's going to cure the problem. [¶] I move for mistrial on the grounds that a comment like that is so prejudicial to the Defendant, because it tries to lend the impression to the jury that the Court has been ruling unfairly to Mr. Abernathy, you've kept out some evidence that perhaps they should hear."

counsel if he wanted a mistrial; he said he did, and the court granted the request.[2] In open court, the jury was advised of this fact.[3]

Defendant did not raise the double jeopardy issue until the second trial had terminated in verdicts of guilty on all counts. Defendant gambled and lost as to a trial on the merits and then brought this motion to set aside the verdicts on the ground he had not personally consented to the mistrial. The motion was denied, giving rise to this appeal.

■ The defense of double jeopardy is waived if not asserted by plea before the second trial has commenced. (*People* v. *Belcher* (1974) 11 Cal.3d 91, 96 [113 Cal.Rptr. 1, 520 P.2d 385].) ■ If the plea would have been meritorious, the failure to assert it could constitute ineffective assistance of counsel, which may be raised on appeal. (*Ibid.* See also, *People* v. *Medina* (1980) 107 Cal.App.3d 364, 370 [165 Cal.Rptr. 622].) Accordingly, the issue is properly before us.

■ Discharging a jury without a verdict after jeopardy has attached is a barrier to further prosecution unless the mistrial was granted for legal necessity or with the defendant's consent. (*People* v. *Compton* (1971) 6 Cal.3d 55, 59 [98 Cal.Rptr. 217, 490 P.2d 537].) The Attorney General concedes there was no legal necessity requiring the discharge of the first jury.

■ Defendant contends the tactical decision to keep or discharge a jury is so personal in nature it cannot be made by his attorney. This issue appears to be a novel one to California.

Jury trials are like operas with the finely tuned legal ear of the attorneys assimilating, weighing and reacting to the ebb and flow of the evidence presented to the jury just as the trained ear of the conductor controls the music to give meaning to the drama presented to the audience. A favorable consump-

[2]"THE COURT: Do you want a mistrial? I'll grant it.
"MR. SMELTZER: Yes.
"THE COURT: I'll go ahead and tell the jury."

[3]"THE COURT: Ladies and gentlemen, there has been a motion for a mistrial. I have granted it. That means that you are excused from this case. [¶] I wish to thank you for your efforts in this matter. [¶] I want you to report back to the jury assembly room and indicate as to how many days you've been on duty, then follow their instructions for me. [¶] Got that?
"MR. SMELTZER: Your Honor, would you tell the jury that if they wish they can now, are no longer under the admonition not to talk to anyone?
"THE COURT: In every case—if you recall, I gave you an admonition that you are not to talk to anyone, including the attorneys. Do you recall that? [¶] All right. The People—either side—may want to talk to you. Whether you choose to talk to them is something that is within your own privilege. If you wish to answer their questions, you may do so. On the other hand, if you choose not to do so, that is also your privilege. [¶] Any question in that regard? [¶] All right. Fine. You are excused. I'll excuse both Counsel if you wish to approach the jury. In about 20 minutes we will start up again, and I'll reset. [¶] All right."

tion of the product is the sum total of the skill in compounding the mixture, and the appropriate expertise to make it the most palatable. The decision to request a mistrial is an appropriate function of the trial attorney representing the best interests of the defendant. To *require* the defendant to participate and consent would be akin to having the untrained musical ear assimilate, weigh and react to the differences, if there be any, in Chopin's "Polonaise" and the modern version "Til the End of Time."

There is no doubt the trained ear of the defense attorney was unfavorably vibrated by the material heard by the jury and his natural reaction was to request a mistrial to protect his client's constitutional rights. The defendant argues this was without his consent and he should profit and be protected from his well-meaning but overly solicitous attorney. He contends the action of his attorney can be equated with a well-meaning but overly solicitous trial judge who grants a mistrial to protect defendant's interests without his consent. The distinction is obvious. The actions of the trial judge under the above would effectively remove the control of the lawsuit from the defendant and his attorney.

Defendant relies heavily on *Curry* v. *Superior Court* (1970) 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345]; *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371]; and *Hutson* v. *Superior Court* (1962) 203 Cal.App.2d 687 [21 Cal.Rptr. 753]. These three courts prohibited prosecution after the trial court had ordered a mistrial on its own motion without the consent of the defendant or his counsel, utilizing these general words: The purpose of the double jeopardy prohibition is to protect the defendant from embarrassment, expense and ordeal caused by repeated attempts to convict; and even though the trial court feels it is acting to protect the defendant's interest, the defendant may have some valid reasons to prefer going ahead with the trial rather than beginning the entire process anew. The defendant should be given the opportunity to consent to the continuance of the original trial and not have it aborted without his consent by a well-meaning but overly solicitous trial judge. Utilizing this general language and the additional language in *Hutson* to the effect such an important right involves the defendant personally and he should have been given an opportunity to consent to the procedure or specifically refuse would require the court to extract from the defendant personally a knowing and intelligent waiver prior to finding consent.

In a recent decision, a contention which was similar but not identical to that raised by defendant was rejected. (*People* v. *Allen* (1980) 110 Cal.App.3d 698, 704 [168 Cal.Rptr. 227].) The defendant in *Allen* urged that a consent to discharge a jury should be measured by the "knowing, intelligent, and voluntary" waiver standard of *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357], which would require the trial court to advise the defendant, on the record, of the nature of the right he

was waiving. (See *In re Yurko* (1974) 10 Cal.3d 857, 860, fn. 3 [112 Cal.Rptr. 513, 519 P.2d 516].) As noted in *Allen,* this same contention had already been rejected in *United States* v. *Dinitz* (1976) 424 U.S. 600 [47 L.Ed.2d 267, 96 S.Ct. 1075].[4] Although *Allen* does not directly hold that counsel may obtain a mistrial without defendant's knowledge or express consent, it certainly points in that direction.

The Attorney General's position is also supported by *People* v. *Watson* (1966) 244 Cal.App.2d 89 [52 Cal.Rptr. 821], which the parties appear to have overlooked. In *Watson,* the defendant's attorney made a motion for mistrial or, in the alternative, for a jury admonition. When the trial court announced its willingness to grant a mistrial, defense counsel withdrew the mistrial motion and settled for an admonition. On appeal, defendant contended the mistrial motion could not be withdrawn without his consent. The contention was rejected: "Appellant has no constitutional right to be personally consulted before the court accepts a withdrawal of a motion for mistrial by defense counsel." (*People* v. *Watson, supra,* at p. 95.)

■ It is well established the power to control judicial proceedings is vested exclusively in counsel. (*People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 486 [102 Cal.Rptr. 744, 498 P.2d 992].) Defense counsel is generally authorized to make tactical decisions concerning introduction of evidence and to control court proceedings, without the necessity of first obtaining a personal waiver from the client. (*People* v. *Jackson* (1980) 28 Cal.3d 264, 314 [168 Cal.Rptr. 603, 618 P.2d 149]; see also, *People* v. *Hill* (1967) 67 Cal.2d 105, 114-115 [60 Cal. Rptr. 234, 429 P.2d 586].) Counsel does have the authority to make decisions involving the client's constitutional rights. (*People* v. *McCoy* (1974) 40 Cal. App.3d 854, 857-860 [115 Cal.Rptr. 559]; *People* v. *Chasco* (1969) 276 Cal. App.2d 271, 274-275 [80 Cal.Rptr. 667].)

"Counsel's control, of course, is not unlimited, and there are certain fundamental protections guaranteed an accused which counsel may not waive without his client's concurrence." (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619].)

■ We hold the right of the defendant to request a mistrial or proceed to a conclusion with the same jury, though a fundamental one, is one that should

---

[4]"This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." (*United States* v. *Dinitz, supra,* 424 U.S. 600, 609, fn. 11 [47 L.Ed.2d 267, 275, 96 S.Ct. 1075].) Certain language in *Dinitz,* not relevant to the issue before us, was disapproved in *Oregon* v. *Kennedy* (1982) 456 U.S. 667 [72 L.Ed.2d 416, 102 S.Ct. 2083].

and can properly be exercised by experienced legal minds and is not beyond the control of counsel. Counsel's intimate knowledge of the case and the potential harm to defendant's theory of the defense places him in a unique position to conclude when to take affirmative action in requesting a mistrial. We are influenced in reaching this decision by examination of the cases where the issue of defendant's consent has been discussed. Courts, in oblique reference to this problem, have been uniform in suggesting the conclusion reached by us today. In *Cardenas* v. *Superior Court, supra,* 56 Cal.2d 273, 276-277, the Supreme Court observed: "This was not a case in which counsel's conduct led the court to believe that he was consenting to a mistrial, as in *People* v. *Kelly,* 132 Cal.App. 118 [22 P.2d 526], relied upon by the People. The record is clear that counsel was not consenting and the case thus must be treated as one in which the mistrial was granted on the prosecutor's motion . . . ."

*Cardenas* was followed by *Curry* v. *Superior Court, supra,* 2 Cal.3d 707, 713: "At no time did petitioners, in person *or* through counsel, expressly consent to the granting of the mistrial or the discharge of the jury." (Italics supplied.) *People* v. *Compton, supra,* 6 Cal.3d 55, 62, in discussing *Curry* stated: "Turning to the issue of consent, we observe that at no time in these proceedings did defendant, in person *or* through counsel, expressly consent to the granting of the mistrial or the discharge of the jury." (Italics supplied.) *People* v. *McJimson* (1982) 135 Cal.App.3d 873, 877 [185 Cal.Rptr. 605], in discussing this issue indicated: "The Supreme Court, in addition to confirming the timing of 'jeopardy attaching,' held unequivocally that, absent clear consent of a defendant *or* his counsel, a mistried case may not be retried . . . ." (Italics supplied.)

Perhaps the clearest expression on this issue is found in *Hutson* v. *Superior Court, supra,* 203 Cal.App.2d 687, 692, wherein the court indicated: "While it is true that a formal motion for a mistrial made by defendant through his counsel is *construed as consent* to a mistrial on the defendant's part, still that is not the situation here. . . ." (Italics supplied.) We believe the courts' selection of the disjunctive "or" over the conjunctive "and" was an informed and thoughtful choice and they intended it to be accorded its ordinary meaning.[5] This clear direction by the courts compels the conclusion a mistrial granted at the request of counsel *or* defendant would authorize defendant's retrial. ▪ Having resolved the prohibition against double jeopardy on its merits, the defendant's contention defendant's trial counsel was ineffective for failing to assert the defense before the second trial is without merit.

---

[5]Webster's Third New International Dictionary (1961) at page 1585 defines "or": "[U]sed as a function word to indicate (1) an alternative between different or unlike things, . . . (2) choices between alternative things, states, or courses . . . ."

The judgment is affirmed.

Morris, P. J., and Kaufman, J., concurred.